IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID FOCHT and NICOLE FOCHT,  :
:
    Plaintiffs,  :
:
v.  :  3:12-CV-01199
:  (JUDGE MARIANI)
STATE FARM FIRE & CASUALTY CO.,  :
:
    Defendant.  :

## MEMORANDUM OPINION

### I.   Introduction

Presently before the Court is a Motion for Partial Summary Judgment (Doc. 30) filed by the Defendant in the above-captioned lawsuit. The Motion seeks summary judgment on Count II of Plaintiffs' Complaint, which alleges bad faith in the denial of certain insurance coverage after Plaintiffs sustained water damage to their home basement. For the reasons discussed below, the Court will grant the Motion.

### II.   Statement of Facts

The Court finds that the following facts are undisputed upon a neutral reading of the record.

At all relevant times, Plaintiffs—husband and wife David and Nicole Focht—owned a homeowner's insurance policy for their home in Pine Grove, Pennsylvania. (See Def.'s Statement of Undisputed Material Facts, Doc. 31, at ¶ 10.) "On or about September 7, 2011, Plaintiffs' home was damaged as a result of Hurricane Irene and/or Tropical Storm

Lee." (*Id.* at ¶ 12.) Plaintiff David Focht testified that at this time "a big flood hit the Pine Grove area" which caused "a disaster" with "a lot of flooding" and "constant rain." (*Id.* at ¶ 13.)

After this storm, Plaintiffs observed damage to the exterior of their home as well as to the basement interior. (*Id.* at ¶¶ 14, 16.) They reported this damage to their insurance carrier, Defendant State Farm Insurance. (*Id.* at ¶ 18.) State Farm then sent a representative, nonparty Dennis O'Neil, to inspect Plaintiffs' damage. (*Id.*) "At this inspection, Mr. O'Neil inspected the exterior and interior of the home. Mr. O'Neil observed some damage to the exterior (fascia, gutters and paint off chimney) but did not see any visible damage to the upstairs, main level of the home." (*Id.* at ¶ 19.) O'Neil also "observed water damage on the basement walls, from the floor level to about 1 feet [*sic*] up the walls." (*Id.* at ¶ 21.)

At the inspection, O'Neil informed Plaintiffs that, while State Farm would pay for the exterior damage to the house, it would not cover the damage to the interior basement, because such damage was "flood damage" not covered by Plaintiffs' homeowner's insurance policy. (*Id.* at ¶¶ 22-23.) The parties agree that the homeowner's policy is the only one applicable here and that Plaintiffs did not maintain flood insurance for their home. (*See id.* at ¶ 26; *see also* Pls.' Mem. of Law. in Opp. to Mot. for Partial Summ. J., Doc. 33, at 10 ("If, in fact, it was 'flood' then the Fochts did not have the appropriate flood

coverage.").) Subsequently, State Farm did indeed refuse coverage for the basement, citing the homeowner's policy, which provides as follows:

> **SECTION I – LOSSES NOT INSURED**
>> 2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>>> c. **Water Damage**, meaning:
>>>> (1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;
>>>> (2) water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or
>>>> (3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

(Doc. 31 at ¶¶ 31-32 (quoting Homeowner's Policy, Doc. 31, Ex. B, at 10).)

State Farm did, however, pay for the damage to the outside of the home. It assessed that damage at $1,411.13 replacement cost value and, after subtracting Plaintiffs' deductible, paid $411.13. (*Id.* at ¶¶ 28-29.)

Plaintiffs disagreed with State Farm's analysis of the cause of the basement damage. The damage was not, they contend, caused by flooding, but rather by water

3

leaking through the damaged roof and chimney into the basement walls. (*See* Pls.' Statement of Mat. Facts, Doc. 34, at ¶¶ 4, 9, 14, 17, 23). O'Neil, however, asserts that "[t]here was no evidence of damage from a roof leak" because "[t]here no stains on the ceiling[, n]o stained walls, no wet carpet, no wet walls on the upper floors at all." (Dennis O'Neil Dep., Doc. 36, Ex. B, at 31:2-7.)

Subsequent experts retained in this case continued the same disagreements. State Farm retained an engineer, Matthias Szayna, who "opined that there is no indication of any water filtration along the roof, soffit, flashing around the chimney, or vinyl siding" and "no water staining, damage or rot to the framing along the cornet of the front soffit." (Doc. 31 at ¶¶ 36-37 (citing Szayna Reports, Doc. 31, Exs. H, I.).) He concluded that the "water in Plaintiffs' basement did not come from any damage to the roof, gutters or soffit."[1] (*Id.* at ¶ 38 (citing Doc. 31, Exs. H, I.)

Plaintiffs, on the other hand, retained public adjuster Scott Luscavage. Luscavage observed damages to the roof and the basement, (*see* Luscavage Dep., Doc. 36, Ex. C, at 11:1-20:13), and concludes that the basement water infiltrated the home through damage to the chimney and roof, (*see id.* at 16:22-24, 27:17-28:1). Luscavage's estimate of the total cost of repairs varies slightly in the different sources submitted to the record, though this appears to simply be an issue of factoring taxes, profit, and overhead into one bill but not

---

[1] Plaintiffs deny the truth of this conclusion. (*See* Pls.' Ans. to Def.'s Statement of Mat. Facts, Doc. 39, at ¶ 38.) However, the averment accurately states what Szayna concluded in his reports, regardless of whether his conclusion is true or false. (*See* Doc. 31, Ex. H, at 2; *id.*, Ex. I, at 2.)

4

the other. (*Cf. id.* at 20:14-16 ($14,381.01) (statement of Attorney Lee Ullman); David Focht Dep., Doc. 36, Ex. A., at 49:23-50:3 ($18,750.07) (statement of same).) But regardless of which estimate is taken as applicable, these aggregate estimates are not broken down between costs allocated to the damages to the basement (which Defendant did not pay) and costs allocated to exterior damages (which Defendant did pay), thereby making a comparison to the amount of money that Defendant ultimately did pay somewhat unclear. Finally, another expert, Scott Lechki, a contractor hired by Plaintiffs to make repairs prior to litigation, estimated the costs of repairs at "close to $5,000." (David Focht Dep. at 43:15-20.)[2]

### III. Procedural History

On May 18, 2012, Plaintiff filed this action in the Schuylkill County Court of Common Pleas. (*See* Compl., Doc. 1-2.) The Complaint, which was subsequently removed to federal court, alleged causes of action for Breach of Contract (Count I) and Bad Faith (Count II). (*See id.* at ¶¶ 15-22.) The present Motion for Summary Judgment only challenges the claim for Bad Faith. (*See* Mot. for Summ. J., Doc. 30, at ¶ 11.)

Defendant had challenged the Bad Faith claim once before, in a Motion to Dismiss. (*See* Mot. to Dismiss, Doc. 4, at ¶¶ 14-16.) In a Report and Recommendation that this Court subsequently adopted, (*see* Order, Nov. 28, 2012, Doc. 16, at ¶ 1), Magistrate Judge

---

[2] The statement is based on David Focht's reading of an exhibit—purportedly Lechki's estimate—submitted to him during his deposition. Neither the written estimate nor Lechki's deposition have been submitted to the record, though Lechki apparently was deposed. (*See* Luscavage Dep. at 28:8-9 ("We just deposed another Scott, a Scott Lechki, who had provided an estimate to the Fochts.") (statement of Attorney Michael Fiorillo).

Martin Carlson provided an extensive discussion of the Bad Faith issue. (*See* Report and Recommendation ("R&R"), Doc. 15, at 9-16.) In recommending denial of the Motion as to the Bad Faith claim, Judge Carlson wrote that while "a number of the allegations made by the Fochts are somewhat conclusory in nature, the Fochts have included in their complaint some limited factual allegations" sufficient to survive a motion to dismiss. (*See* R&R at 13.) In this regard, the Magistrate Judge first quoted Plaintiffs' allegations that State Farm engaged in bad faith when it:

> (A) Misrepresented pertinent facts or policy or contract provisions relating to the coverages; (B) Failed to acknowledge and act promptly upon written or oral communication with respect to claims arising under Plaintiffs' policy; (C) Failed to adopt and implement reasonable standards for the prompt investigation of the claim arising under Plaintiffs' policy; (D) Failed or refused to pay Plaintiffs' claim without conducting a reasonable investigation based upon all available information; (E) Did not attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs' claims in which Defendant's liability under Plaintiffs' policy is reasonably clear; (F) Compelled Plaintiffs to institute the within litigation to recover the amounts due under their policy by offering substantially less than the amounts due and which Plaintiffs believe will be ultimately covered in this action brought by Plaintiffs; [and] (G) [A]ttempted to settle Plaintiffs' claims for less than the amount to which a reasonable man would have believed he was entitled.

(*Id.* at 14 (quoting Compl. at ¶ 20) (internal alterations omitted).) Judge Carlson concluded that "these averments, while limited, are sufficient to allow this claim to proceed forward. At the outset, the allegations that State Farm failed in numerous ways to properly underwrite and service this claim, while somewhat cursory, are adequate to satisfy the first element of a bad faith claim." (*Id.* at 15.)

Judge Carlson's Report and Recommendation was also influenced in particular by an assertion in the Complaint that State Farm denied the Plaintiffs' claim despite David Focht's statement to Dennis O'Neil that State Farm had already paid a past, similar water damage claim under an identical policy. (*Id.* at 15.) This assertion is found in paragraph 9 of the Complaint, in which Plaintiffs alleged that Focht informed O'Neill that the Plaintiffs "had the same policy at a property he owned in 2003", at which property a "sewage pipe burst and Plaintiffs had water damage. That claim was paid." (Compl. at ¶ 9.) O'Neil allegedly replied only that "[t]hey never should have paid that" and proceeded to prepare an estimate that did not include the water damage, which was followed by the official denial from State Farm discussed *supra*. (*Id.* at ¶¶ 9-11.) Judge Carlson wrote that this allegedly disparate treatment of similarly-situated claims

> creates a disputed factual issue . . . namely, whether the insurer's actions involved a knowing or reckless denial of a claim without a reasonable basis. While this assertion may not withstand closer scrutiny once matters outside the pleadings are considered, such as the language of the policies, the past dealings of the parties, and the precise nature and source of the damage that is the subject of the claim, these matters are more appropriately addressed through a motion for summary judgment, rather that [*sic*] in a motion to dismiss, where we must simply assess the sufficiency of the pleadings.

(R&R at 15-16.)

Now that discovery has concluded and these matters have been brought before the Court again on summary judgment, the issue of bad faith is ripe for resolution.

### IV. Standard of Review

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 265 (1986). Once such a showing has been made, the nonmoving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

## V.   Analysis

Pennsylvania statutory law provides a cause of action for bad faith conduct arising under an insurance policy. *See* 42 Pa. Cons. Stat. Ann. § 8371. "The standard for bad faith claims under § 8371 is set forth in *Terletsky v. Prudential Property & Cas. Ins. Co.*, 437 Pa. Super. 108, 649 A.2d 659, 688 ([Pa. Super. Ct.] 1994), *appeal denied*, 540 Pa. 641, 659 A.2d 560 ([Pa.] 1995)." *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997).

The *Terletsky* court ruled that "'[b]ad faith' on [the] part of [an] insurer is any frivolous or unfounded refusal to pay [the] proceeds of a policy." *Terletsky*, 649 A.2d at 688 (quoting Black's Law Dictionary 139 (6th ed. 1990). For purposes of such an action, bad-faith conduct "imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." *Id.* (quoting same). "[T]o recover under a claim of bad faith, the plaintiff must show [(a)] that the defendant did not have a reasonable basis for denying benefits under the policy and [(b)] that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Id.*

"Further, bad faith must be proven by clear and convincing evidence and not merely insinuated." *Id.* Therefore, "[i]n a bad faith case, summary judgment is appropriate when there is no clear and convincing evidence that the insurer's conduct was unreasonable and that it knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999).

Here, Plaintiffs submit to the Court a lengthy list of examples of conduct that has been found to constitute bad faith in the past, most of which have no application to the facts of their case. (*See* Doc. 33 at 4-9.) Moreover, it is unclear to what extent the allegations listed by Judge Carlson, and recounted here on page 6, *supra*, are still at issue in this case, in that they are not specifically reargued in any of the summary judgment briefs. Indeed, these allegations, which Magistrate Judge Carlson described as "limited" and "spare," (R&R

at 15, 16), appear to have been supplanted by more specific arguments. Thus, Plaintiffs now argue that Dennis O'Neil's inspection of their property was inadequate, primarily because they say that he "made an immediate and, in fact, incorrect assumption" that the damage was caused by flood water and that "Defendant acted in bad faith in its immediate and unsubstantiated denial of the claim." (*See* Doc. 33 at 10-11.) As evidence of this conclusion, Plaintiffs note the fact that O'Neil only "spent approximately 25-30 minutes at the Focht property" and that he came to a conclusion different from that of Scott Luscavage; that a discrepancy exists between O'Neil's belief that the water that entered the house was "sub-surface water" and State Farm's official denial letter stating that it was "surface water;" and that another discrepancy exists between O'Neil's opinion that "the cause of loss was high winds" and that of an unspecified expert (possibly Szayna) purportedly retained by State Farm who opined in a likewise unspecified document that "there were 'minimal winds'" at the time in question. (*See id.* at 11.) All of this, Plaintiffs argue "support[s their] contention that this was not a 'substantial and thorough' investigation." (*Id.*)

The Court, however, cannot agree that these facts, even when viewed in the light most favorable to the Plaintiffs, create triable issues for the jury. First, some of these discrepancies are irrelevant. For instance, Plaintiffs' insurance policy does not insure against losses for either surface water *or* subsurface water, (*see* Homeowner's Policy, Doc. 31, Ex. B, Section I – Losses Not Insured, (2)(c)(1), (3)), so any confusion between the two water sources should not affect whether the claim was paid. Moreover, though Plaintiffs

10

complain that O'Neil spent only 25-30 minutes at their home, there is no reason to believe, on the record before us, that a longer time was necessary, given that O'Neil's uncontradicted testimony that he only observed water damage in the basement and none on the upper levels of the home, which would substantiate State Farm's claim that the cause of loss was flooding. (*See* Dennis O'Neil Dep. at 31:2-7; *compare also* Doc. 31 at ¶ 19 ("[O'Neil] did not see any damage to the upstairs, main level of the home.") *with* Doc. 39 at ¶ 19 ("Admitted.").) In this regard, it is relevant that the District Court for the Eastern District of Pennsylvania has held that, in determining whether a defendant had a "reasonable basis" for denying an insurance claim, the test elucidated in *Terletsky* "is an objective one" and that as long as "a" reasonable basis exists to deny the claim, "there cannot, as a matter of law, be bad faith." *Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 574 (E.D. Pa. 2000).[3] Therefore, the fact that the physical damage is consistent with a determination of flooding provides an objectively reasonable basis sufficient to avoid a claim of bad faith.

It is possible that, at trial, a reasonable jury would find in favor of the Plaintiffs on their breach of contract claim and conclude that flooding was not the cause of loss. But,

---

[3] Though promulgated by a district court, this holding has been accorded precedential value by many decisions of the various other districts courts of Pennsylvania. *See, e.g., Serino v. Prudential Ins. Co. of Am.*, 706 F. Supp. 2d 584, 592 (M.D. Pa. 2009); *Livornese v. Med. Protective Co.*, 219 F. Supp. 2d 645, 648 (E.D. Pa. 2002), *rev'd on other grounds*, 136 Fed. App'x 473 (3d Cir. 2005); *Meyer v. CUNA Mut. Group*, 2007 WL 2907276, at *12 (W.D. Pa. 2007); *but cf. Shannon v. New York Cent. Mut. Ins. Co.*, 2013 WL 6119204, at *3 (M.D. Pa. 2013) ("Given the remedial purpose underpinning the Bad Faith Statute, we are not persuaded that permitting an insurer to evade its statutory obligation due to some fortuitous fact to which it was oblivious is consistent with the legislature's intent.").

based on the record before the Court, there is no evidence to support the assertion that State Farm "acted with a dishonest purpose" or "breach[ed] a known duty" sufficient to trigger a bad faith claim under *Terletsky*. In other words, all that Plaintiffs allegations about error in the investigation process amount to is, at most, a claim that State Farm acted through "negligence or bad judgment." While a jury could find this to support a claim for breach of contract, it does not state a claim for bad faith under Pennsylvania law. *See Terletsky*, 649 A.2d at 688 ("[M]ere negligence or bad judgment is not bad faith.").

Nor may the supposed discrepancy—even if assumed to be true—between the handling of the 2003 and 2011 claims defeat Defendant's Motion for Summary Judgment. According to David Focht's deposition, the 2003 loss occurred when a municipal water line broke and flooded the Plaintiffs' home. (*See* David Focht Dep. at 63:12-64:15.) The "Water Damage" subsection of the "Losses Not Insured" listed in Plaintiffs' insurance policy excludes from coverage damage from "water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area" as well as "water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure." (Doc. 31, Ex. B, at 10.) There is no evidence in the record establishing whether any of these exclusions applied to the specific type of damage that Plaintiffs sustained in 2003.

However, even if they or some other exclusion did apply, all that could mean is that Plaintiffs received money in 2003 to which they were not entitled. State Farm's oversights in 2003 cannot be evidence for bad faith in the handling of a separate claim in 2011, when Plaintiffs' policy specifically excludes the damage that State Farm determined was at issue in 2011 and when there is no evidence in the record that that determination was motivated by dishonesty or a breach of known duty as would be required to establish bad-faith liability under *Terletsky*.

## VI. Conclusion

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment (Doc. 30) is **GRANTED**. A separate Order follows.

/s/ Robert D. Mariani
Robert D. Mariani
United States District Judge